```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :       CRIMINAL ACTION
                                :
         v.                     :
                                :
KEYNAN GREEN                    :       NO. 05-544-1
```

MEMORANDUM

Dalzell, J.                                          May 5, 2006

        Defendant Keynan Green, charged here with ten counts of drug and gun offenses, has filed a motion to suppress evidence seized pursuant to a search warrant that Magistrate Judge Caracappa issued on August 22, 2005. As Green only questions the adequacy of the affidavit of probable cause that grounds the search warrant for 4509 Devereaux Street in lower Northeast Philadelphia, we measure the affidavit against rather settled jurisprudence.

Factual Background

        Four times in June of 2005, Philadelphia Police Officer Kenneth Bethea of the Intensive Drug Investigation Squad ("IDIS"), acting undercover, bought crack from Keynan Green. August 22, 2005 Aff. of Officer Andrew Rehr ("Rehr Aff.") ¶ 4. In total, Green sold Bethea 61.6 grams. Id. Each transaction took place in Philadelphia, and members of IDIS and Philadelphia's DEA Task Force saw all four transactions. Id. On two of these occasions, June 17 and June 22, 2005, surveillance officers watched Green leave 4509 Devereaux Street and drive directly to the pre-arranged sale location. Id. ¶ 5. On a fifth date in June, Bethea called Green to buy crack, and Green

directed Bethea to go to the intersection of Devereaux and Jackson Streets, near the 4500 block of Devereaux.  Id. ¶ 6.  When Bethea called Green to finalize their arrangements that day, Green never answered, and the deal was not consummated.  Id.

On August 11, 2005, Magistrate Judge Welsh signed a complaint and warrant charging Green with distributing and possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  Id. ¶ 7.  On August 22, 2005, officers went to 4509 Devereaux Street to arrest Green.  When Green exited, he saw the officers, fled, and dropped a clear plastic baggie with fifteen packets and four other baggies within, each containing crack.  Id. ¶ 8.  The total net weight was reported to be 43.4 grams.  Id.

After arresting Green, DEA Task Force Officer Andrew Rehr submitted an application and affidavit for search warrant to Judge Caracappa.  In addition to relating the above facts, Rehr described his background as a Philadelphia police officer for twenty-four years who had been assigned to the Department's Narcotics Bureau for thirteen years and to the DEA Task Force for seven years.  Rehr Aff. ¶ 1.  Rehr also communicated his suspicion, based on his experience, that Green had records, drug contraband, and weapons hidden somewhere.  Id. ¶ 10.

After Judge Caracappa signed a search warrant, DEA Task Force agents entered 4509 Devereaux Street.  They seized bags containing over 100 grams of cocaine base and $850 in currency.  They also seized a .45 caliber Ruger semi-automatic pistol with

2

eight rounds of .45 caliber ammunition, and a Winchester ammunition box with thirty-one rounds of .380 ammunition. Additionally, the agents found assorted paraphernalia including a heat sealer and an electronic scale. The search also produced a Pennsylvania driver's license, MasterCard credit card, and Meineke receipt, all in Green's name, as well as mail addressed to him. See Gov.'s Mem., at 3-4.

On September 21, 2005, a Grand Jury indicted Green for distribution of cocaine base (four counts), possession with intent to distribute cocaine and cocaine base (four counts), possession of a firearm in furtherance of a drug-trafficking crime (one count), and being a felon in possession of a firearm (one count). In essence, Green's suppression motion contends that Rehr's affidavit was deficient because it failed explicitly to connect his drug dealing with 4509 Devereaux Street.

II. Legal Analysis

   1. Probable Cause

A district court's review of a magistrate judge's probable cause determination is deferential. The district court must decide merely whether the magistrate judge had a "substantial basis" for finding probable cause. United States v. Whitner, 219 F.3d 289 (3d Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)); see also United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (Alito, J.) (same). The district court does not independently assess whether probable cause existed but rather "determine[s] only whether the affidavit

provides a sufficient basis for the decision the magistrate judge actually made." United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993).

Then-Circuit Judge Alito's analysis in Hodge is pointedly relevant to Green's case. In Hodge, Virgin Islands police arrested Hodge after watching him attempt a drug deal, flee, and discard 250 grams of crack. 246 F.3d at 304. Following the arrest, an officer filed an affidavit seeking a search warrant for Hodge's home. Id. In that affidavit, the officer described Hodge's flight, possession, and arrest. Id. "Based upon his training and experience," the officer swore, "persons involved in the receipt and distribution of controlled substances commonly keep within their residences evidence of their criminal activity." Id. at 304-05. This excerpt was the only part of the affidavit that touched on Hodge's home.

Relying on the officer's affidavit, a magistrate found probable cause to search the home and issued a warrant. Id. at 305. During the search, the police found 600 grams of crack, thirty grams of marijuana, live ammunition, and a machine gun. Id. Before trial, the district court suppressed this evidence on the basis that the affidavit failed to establish a nexus between Hodge's drug activity and his home. Id. On appeal, the Government argued that the affidavit provided a substantial basis for finding probable cause and that, in any event, the officers

relied on the warrant in good faith. Id. The panel[1] agreed. Id. at 304.

At the outset, the panel addressed the very argument Green makes here and emphasized that "direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." Id. at 305 (quoting United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993)). While the panel acknowledged that no direct evidence linked Hodge's home to his drug dealing, it underscored that "there was significant evidence from which the magistrate judge might reach that conclusion." Id. at 306. First, because Hodge possessed a large quantity of crack when he was arrested, carried drugs in the front of his pants to avoid detection, and used a rental car (also, presumably, to avoid detection), the panel inferred that he was "an experienced and repeat drug dealer who would need to store evidence of his illicit activities somewhere." Id. (emphasis added). From that inference, the panel then extrapolated, "It is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home." Id. Second, the panel noted that Hodge's home was in the same city where he attempted the drug deal, there was probable cause to arrest him on drug charges, and the police officer's suspicion -- in light of his counter-narcotics experience -- was entitled to at least some deference. Id. at 307.

---

1. Judge Mansmann and Judge Fullam (sitting by designation) joined Judge Alito.

The affidavit here, like the one in <u>Hodge</u>, showed that Green was an experienced and repeat drug dealer. In June of 2005, Green sold crack to Bethea four times. Rehr Aff. ¶ 4. As a drug dealer, Green, like Hodge, needed to store his contraband and records <u>somewhere</u>. <u>See</u> <u>Hodge</u>, 246 F.3d at 306. And, as in <u>Hodge</u>, Green's home was in the same city where he sold drugs, <u>id</u>. ¶¶ 3-4, there was ample probable cause to arrest him on drug charges, <u>id</u>. ¶¶ 7-8, and the affiant's suspicions as a seasoned law enforcement officer are entitled to some deference, <u>id</u>. ¶¶ 9-10.

Even more compelling than in <u>Hodge</u>, the affidavit here actually linked this site to Green's drug dealing. First, on June 17, 2005 and June 22, 2005, surveillance officers watched Green exit 4509 Devereaux Street and drive directly to the pre-arranged sale location. <u>Id</u>. ¶ 5. Second, on a fifth date in June, Green told Bethea that the crack sale would occur at "an intersection at the corner of the 4500 [<u>sic</u>] of Devereaux", and he directed Bethea to drive to that intersection. <u>Id</u>. ¶ 6. Last, when the police arrested Green, "he exited 4509 Devereaux Street", fled, and dropped 43.4 grams of crack. <u>Id</u>. ¶ 8.[2]

---

2. At the conclusion of the suppression hearing this day, Green's able defense counsel made an offer of proof regarding the testimony of a witness who, it is claimed, would testify that ¶ 8 of Officer Rehr's affidavit was incorrect insofar as it referenced discarding of packets and baggies "each containing alleged crack cocaine." <u>See</u> Rehr Aff. ¶ 8. This proffer, even if accepted, does not warrant even the exploration of a <u>Franks</u> hearing because the proffered testimony does not dispute the defendant's link to 4509 Devereaux Street mentioned in that paragraph <u>or</u> in the recitation in ¶ 5 regarding two prior
(continued...)

To be sure, as Green's counsel noted at oral argument, nowhere in Officer Rehr's affidavit is there language that states that "4509 Devereaux Street was Green's stash house" or words to that effect.  Instead, Officer Rehr ended his affidavit with the conclusion that "I believe that there is probable cause to search 4509 Devreaux Street for controlled substances [etc.]."

We are aware of no jurisprudence in this Circuit or from the United States Supreme Court that would require an affiant to incant, <u>in</u> <u>haec</u> <u>verba</u>, words to the effect that "this place is where defendant runs his drug operation."  Indeed, the teaching of <u>Hodge</u> is quite to the contrary.  Within the four corners of Officer Rehr's affidavit it is pellucid that law enforcement did not pick 4509 Devereaux Street out of the air, but had seen that site recur as the venue for <u>some</u> aspect of Green's drug operation.  Search warrant jurisprudence requires no more.

    2.  <u>Good Faith Exception</u>

Even if Judge Caracappa lacked a substantial basis for finding probable cause, Green's motion would fail unless he could refute the good faith exception.  Under that exception, the suppression of evidence "'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'"  <u>Hodge</u>, 246 F.3d at 307 (quoting <u>United</u>

---

2.  (...continued)
occasions ("Green exit[ed] 4509 Devereaux Street" on June 17 and June 22, 2005 and then immediately "sold the crack to Officer Bethea").  <u>Id.</u> ¶ 5.

States v. Williams, 3 F.3d 69, 71 n.2 (1993)).  "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'"  United States v. Loy, 191 F.3d 360, 365 (3d Cir. 1999) (quoting United States v. Leon, 468 U.S. 897, 922 n.23 1984)).  The mere existence of a warrant usually suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.  Hodge, 246 F.3d at 308 (citing Leon and Williams).

Here, to refute the good faith exception, Green would have to show that (1) Judge Caracappa issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) Judge Caracappa abandoned her judicial role and failed to perform her neutral and detached function; (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.  Williams, 3 F.3d at 74 n.4.  Green does not seriously contend, nor could he, that any of these apply.

Under settled jurisprudence, it was entirely reasonable for the officers to rely on Judge Caracappa's authorization to search 4509 Devereaux Street for drugs, drug paraphernalia, and guns.  Hodge, 246 F.3d at 309; Williams, 3 F.3d at 74.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        CRIMINAL ACTION
                                :
          v.                    :
                                :
KEYNAN GREEN                    :        NO. 05-544-1
```

ORDER

AND NOW, this 5th day of May, 2006, upon consideration of defendant's motion to suppress physical evidence (docket no. 52) and the Government's response thereto, and after a hearing this day and in accordance with the foregoing Memorandum, it is hereby ORDERED that the motion is DENIED.

BY THE COURT:

_____
Stewart Dalzell, J.